**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

CHAD NEWMAN,

               Plaintiff,

    vs.

MIKE JOHANNS, Secretary of the
Department of Agriculture,

              Defendant.

CV 05-36-M-DWM-JCL

FINDINGS & RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

_____

    Defendant has moved for summary judgment as to all claims
leveled against it in this employment discrimination case.
Having reviewed the briefs and other materials of record, the
Court enters the following:

## RECOMMENDATION

    **IT IS RECOMMENDED** that Defendant's Motion for Summary
Judgment be **GRANTED.**

    NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a
copy of the Findings and Recommendation of the United States
Magistrate upon the parties.  The parties are advised that
pursuant to 28 U.S.C. § 636, any objections to these findings

must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 11th day of September, 2007

_/s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge

**RATIONALE**

## I.  Background

Plaintiff Chad Newman ("Newman") worked for the United States Forest service as a seasonal firefighter and smokejumper from 1990 through 2002.  Depo. Chad Newman 12:10-14:7; 34:13-35:7 (Sept. 29, 2006).  Newman's employment status during each of those years was that of a temporary employee, which meant that his employment terminated at the end of each fire season.  Depo. Newman 32:25-33:7.  As it had before, the Forest Service re-hired Newman in 2002 to work as a forestry technician smokejumper during the fire season.  Depo. Newman 34:21-35:7; Exh. 1.  As with his prior appointments, Newman's position during the 2002 fire season was a temporary one.  Depo. Newman 34:21-35:7; Exh. 1.

On July 27, 2002, Newman injured his back while fighting a fire in the Kootenai National Forest.  Depo. Newman 39:16-40:21. As a result of this work-related injury, Newman submitted a claim with the Office of Workers' Compensation and was off work for

approximately one week.  Depo. Newman 42:23-25.  The Forest
Service then placed him on light-duty status, pending a
recommendation from his physician as to his ability to work.
Depo. Newman 45:23-26:7.  In late August, Newman's physician
released him to return to light duty work, with certain
restrictions.  Depo. Newman 45:23-46:7; Exh. 2.

In early September 2002, the Forest Service offered Newman a
light-duty position as an information assistant, which involved
sewing and repairing firefighting gear.  Depo. Newman 48:6-49:19;
Exh. 3.  Newman accepted the job, but found after some time that
the sitting it required aggravated his back condition, despite
the fact that he was allowed to take breaks as needed.  Depo.
Newman 50:1-4.  Newman was off work again for forty-five days to
undergo physical therapy.  Depo. Newman 53:1-4.  By December 2,
2002, his doctor "cleared him to return to all forms of gainful
employment without restrictions," but recommended he "not return
to smoke jumping."  Depo. Newman Exh. 4.

Citing the doctor's release, the Forest Service again
offered Newman a position as an information assistant repairing
firefighting gear.  Depo. Newman 55:3-23; Exh. 5.  Newman
accepted the position, but still found that the sedentary nature
of the work aggravated his back condition.  Depo. Newman 55:24-
56:4.  As a result, the Forest Service transferred Newman to
another temporary, light-duty position at the Northern Rockies
Coordination Center in February 2003.  Depo. Newman 57:8-14.  His

job there involved administrative tasks and dispatch duties.
Depo. Newman 57:23-58:17.  Newman once again reported that the
sitting required aggravated his back condition, and the Forest
Service advised him to take breaks as needed and adhere to his
doctor's recommended work restrictions.  Depo. Newman 60:19-63:2.

The Forest Service terminated Newman's temporary employment
at the close of the fire season on September 26, 2003, citing
lack of work and funding.  Depo. Newman 63:3-9; Exh. 6.  Newman
then filed an Equal Employment Opportunity ("EEO") complaint,
alleging "defamation of character" based on a letter written by a
Forest Service representative to the Office of Workers'
Compensation.  Declaration Sandy L. Abbot, ¶ 3; Exh. 19 (July 10,
2007).  The Equal Employment Opportunity Commission ("EEOC")
affirmed dismissal of Newman's complaint in July 2004, and he
has taken no further action with respect to that complaint.
Decl. Abbott, ¶ 3; Exh. 19.

On December 31, 2003, Newman initiated a second EEO
complaint in which he alleged that the Forest Service had
discriminated against him based on a physical disability.  Decl.
Abbott, ¶ 4, Exh. 20; Depo. Newman, Exh. 8.  He claimed in his
initial contact with the EEO counselor that the Forest Service
discriminated against him by terminating his employment, not
giving him "re-hire rights," and telling him "he would have to
reapply for Federal Service."  Decl. Abbott, Exh. 20.  In his
formal EEO complaint, Newman again alleged that the Forest
Service had discriminated against him based on his back injury,

PAGE 4

which he claimed constituted a physical disability.  Depo.
Newman, Exh. 8.

Newman and the Forest Service entered into mediation to
resolve the issues raised in his second EEO complaint, and on
June 2, 2004, entered into a formal settlement agreement.  Depo.
Newman. 77:2-12; Exh. 9.  The Forest Service agreed to employ
Newman in a temporary position as a forestry technician for the
2004 fire season, explaining that the "length of the appointment
[was] dependant on [the] duration of the fire season and related
work activities."  Depo. Newman, Exh. 9, p. 1.  The Forest
Service also agreed to provide Newman with "on the job training
in the operation of a forklift."  Depo. Newman, Exh. 9, p. 1.

Newman, in turn, agreed that the settlement agreement
constituted a "resolution of his informal/formal EEO complaint,"
and agreed "not to file any new complaints, civil action,
grievances, or appeals about any employment related issue that
existed on or before" the date of the agreement.  Depo. Newman,
Exh. 9, p. 2.  In the event the Forest Service failed to abide by
the terms of the agreement "through no fault" of Newman, the
settlement agreement set forth a specific procedure by which he
could request enforcement of the agreement or reinstate his EEO
complaint.  Depo. Newman, Exh. 9, p. 3.

Apparently unaware of the settlement agreement reached by
the parties just days earlier, the Department of Agriculture's
Office of Civil Rights dismissed Newman's EEO complaint on June

PAGE 5

9, 2004, for failure to state a claim and timely exhaust his administrative remedies.  Decl. Abbott, ¶ 6, Exh. 21.

Despite the dismissal, the Forest Service adhered to its agreement and employed Newman at a tanker base during the summer of 2004.  Depo. Newman 82:18-84:24-85:17.  Newman gained some experience operating a forklift on the job that summer, but reported to the Forest Service that it aggravated his back condition.  Depo. Newman 112:20-113:14.  The parties attempted unsuccessfully to schedule additional training, but by the end of the summer Newman still needed between two and four more hours of forklift training.  Depo. Newman, Exhs. 11, 13, 15.

Newman returned to school at the end of August 2004, and his employment with the Forest Service was terminated effective September 30, 2004.  Depo. Newman, Exh. 10.  The Forest Service made several unsuccessful attempts to schedule additional forklift training in September 2004.  Depo. Newman, 104:1-4; Exhs. 11, 12.  On October 19, 2004, approximately two weeks his employment officially ended, Newman notified the EEOC that he was appealing the agency's June 9, 2004, decision dismissing his complaint.  Decl. Abbott, ¶ 8; Exh. 22.  Newman acknowledged that his appeal was untimely, but alleged the Forest Service had failed to comply with the terms of the settlement agreement. Decl. Abbott, ¶ 8; Exh. 22.

In February 2005, the EEOC vacated the agency's decision and remanded the matter for determination of Newman's non-compliance claim.  Decl. Abbott, ¶ 9; Exh. 24.  In the meantime, the Forest

Service continued its attempts to schedule Newman's final forklift training hours, going so far as offering to amend the settlement agreement to cover the cost of tuition, per diem, lodging, airfare, and salary for attending a four-day forklift training school in Seattle.  Depo. Newman, 105:25-106:12, 109:14-110:6, Exhs. 13 14, 17.  Newman rejected their offer, choosing instead to commence this pro se employment discrimination action against his former employer,[1] presumably pursuant to the Rehabilitation Act, 29 U.S.C. § 706(8)(B).  Depo. Newman, 109:14-110:6; Complaint (March 11, 2005).

Newman alleges that the Forest Service discriminated against him based on his allegedly disabling back injury by wrongfully terminating his employment.  Attachment to Complaint, p. 2.  He also claims that the Forest Service failed to comply with the terms of the settlement agreement, and wrongfully denied him benefits.  Attachment to Complaint, p. 2.  As Newman has since explained, his primary claim is that the Forest Service continued to employ him after his on the job injury for the sole purpose of establishing that he had "no loss of wage-earning capacity," for purposes of negatively impacting his federal workers' compensation claim.  Depo. Newman 71:18-74:10.

---

[1] The named Defendant in this case is Mike Johanns, Secretary of the Department of Agriculture.  For purposes of this discussion, the Court will refer to the Defendant as the "Forest Service," which is a branch of the Department of Agriculture.

In April 2006, with this action pending, the Department of Agriculture's Office of Civil Rights issued a final agency decision on Newman's allegations of non-compliance.  Decl. Abbott, ¶ 11; Exh. 25.  The agency dismissed Newman's claim based on lack of jurisdiction in light of the action pending in this Court, and on the basis that the Forest Service had complied with the terms of the settlement agreement.  Decl. Abbott, ¶ 11; Exh. 25.

The Forest Service has now moved for summary judgment with regard to all of Newman's claims.

## II.  Summary Judgment Standards

The party moving for summary judgment bears the initial burden of demonstrating "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment may satisfy its burden where the documentary evidence produced by the parties permits only one

conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Where the moving party has met its initial burden with a properly supported motion, the burden shifts to the non-moving party to "set forth by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Serv., Inc. V. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing* Fed. R. Civ. P. 56(e)). The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248.

## III. Discussion

The Forest Service moves for summary judgment on the threshold basis that Newman's claims are barred by the parties' prior settlement agreement.  Even assuming the settlement agreement does not preclude Newman's lawsuit, the Forest Service argues Newman's claims should be summarily dismissed because he failed to timely exhaust his administrative remedies and does not have a qualifying disability.  Finally, the Forest Service takes the position that this Court lacks jurisdiction over Newman's claim under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8191 et seq.  The Court will address each argument in turn.

**A.  Preclusive effect of settlement agreement**

According to the Forest Service, the 2004 settlement agreement between the parties precludes Newman from pursuing his claims in this case.  The Forest Service is correct.

The Ninth Circuit has long recognized that "there is an overriding public interest in settling and quieting litigation," and endorses "the rule that the law favors and encourages compromise settlements."  *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).  *See also Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *Ahern v. Central Pacific Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988).  There is an equally "strong preference for encouraging voluntary settlement of employment discrimination claims."  *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 616 (1984)(*quoting Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)).  The Ninth Circuit has specifically recognized that "public policy favors voluntary settlement of employment discrimination claims brought under Title VII" of the Civil Rights Act of 1964.  *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 460-61 (9th Cir. 1989).  That court has correspondingly determined that "[a] general release of Title VII claims does not ordinarily violate public policy," if it constitutes a "voluntary, deliberate, and informed" waiver. *Stroman*, 884 F.2d at 462.

Adhering to that principal, the Ninth Circuit has demonstrated a willingness to enforce settlement agreements in employment discrimination cases such as this. *See Pardi v.*

*Kaiser Foundation Hospitals*, 389 F.3d 840, 848 (9th Cir. 2004) (upholding summary judgment in favor of employer on basis that settlement agreement, which contained a general release, barred plaintiff's employment discrimination claims); *Rivera v. Baker West, Inc.*, 430 F.3d 1253 (9th Cir. 2005).

A settlement agreement such as the one at issue here is a contract, the interpretation of which is "governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (*citing Andrus*, 899 F.2d at 759). State law governs that interpretation "even where a federal cause of action is 'settled' or 'released.'" *Botefur*, 7 F.3d at 156; *see also United States v. McCall*, 235 F.3d 1211 1215 (issues involving the formation and construction of a settlement agreement are resolved by applying state contract law).

Under well-established Montana law, "if a contract's terms are clear and unambiguous, a court must apply the language as written." *SVKV, L.L.C. v. Harding*, 158 P.3d 584, 592 (Mont. 2006);. Whether an ambiguity exists "is a question of law for the court to determine." *SVKV,* 148 P.3d at 592. Finally, Montana law recognizes that "one who prevents the performance of the terms of the contract cannot avail himself of the non-performance which he himself prevents." *Fey v. AA Oil corp.*, 288 P.2d 578, 588 (Mont. 1955).

The settlement agreement at issue in this case clearly and unambiguously precludes Newman from litigating any claims related to the "employment concerns" identified in his second EEO

complaint, in which he alleged the Forest Service had
discriminated against him based on a physical disability by
terminating his employment and denying him "re-hire rights."
Depo. Newman, Exh. 9; Decl. Abbott, Exh. 20.  By its terms, the
agreement "constitute[d] a complete and final settlement of all
the employment concerns raised in" Newman's second EEO complaint.
Deop. Newman, Exh. 9, p.2.  Newman specifically agreed "not to
file any new complaints, civil action, grievances or appeals
about any employment related issue that existed on or before the
last signature date to this agreement," which was June 2, 2004.
Depo. Newman, Exh. 9, p. 2.  Newman further agreed to release the
Forest Service "from any and all claims relating to the events
which gave rise to" his EEO complaint.  Depo. Newman, Exh. 9, p.
2.  Finally, Newman agreed by signing the agreement that it
constituted "a full compromise and settlement of all employment
related concerns that arose or could have arisen before" its
signing.  Depo. Newman, Exh. 9, p. 2.

     Newman's claims in this case relate to the Forest Service's
conduct in the wake of his back injury, and therefore relate to
the events giving rise to his EEO complaint.  For example, Newman
claims that the Forest Service discriminated against him based on
his allegedly disabling back injury by wrongfully terminating his
employment in September 2003.  Attachment to Complaint, p. 2.
He also maintains that the Forest Service wrongfully denied him
benefits, and somehow acted improperly by continuing to employ
him after his injury for the sole purpose of undermining his

federal workers' compensation claim.  Attachment to Complaint, p.
2; Depo. Newman 71:18-74:10.   These claims all relate to the
Forest Service's alleged wrongdoing after Newman's on-the-job
injury, and therefore "relate to the events which gave rise to"
his second EEO complaint.  As such, they are barred by the clear
and unambiguous terms of the settlement agreement.

     In an attempt to avoid this result, Newman maintains that
his decision to enter into the settlement agreement was not
voluntary.  He claims that he was "forced into signing [the]
document" in order to maintain a valid Federal Workers
Compensation claim.  Pl.'s Response, 2 (Aug. 17, 2007).   While
the decision to settle may have been a difficult one, Newman has
not stepped forward with any evidence on summary judgment to
indicate that the release he signed was anything but a
"voluntary, deliberate, and informed" waiver.  The record
reflects that Newman was represented by an attorney when he
entered the settlement agreement.  Depo. Newman, 78:20-79:8.
According to Newman, who has a college education, he understood
the terms of the agreement and consulted with his attorney before
signing it. Depo. Newman, 78:20-79:8.  *See Stroman*, 884 F.2d at
462-63 (whether a release is voluntary depends on the clarity of
the agreement, the plaintiff's education and business experience,
whether there was a non-coercive atmosphere, and whether the
plaintiff was represented by counsel).  The undisputed evidence
of record establishes that Newman made the difficult decision to
enter the settlement agreement based upon the advice of counsel

and after considering his options.  Because the record reflects that Newman entered the June 2, 2004, settlement agreement voluntarily, his claims against the Forest Service are barred.

To the extent Newman takes the position that the settlement agreement is not enforceable because the Forest Service failed to satisfy its obligations thereunder, his argument likewise fails. Attachment to Complaint, p. 2.  In consideration of the agreement, the Forest Service agreed to employ Newman as a forestry technician for the 2004 fire season.  Depo. Newman, Exh. 9, p. 1.  The agreement specified that the position was temporary, and would terminate in mid-October 2004, depending on the "duration of the fire season and related work activities." Depo. Newman Exh. 9, p. 1.  The Forest Service also agreed to provide Newman with "on the job training in the operation of a forklift."  Depo. Newman, Exh. 9, p. 1.

The undisputed evidence of record establishes that the Forest Service honored its dual obligations under the settlement agreement.  The record reflects that the Forest Service indeed employed Newman as a forestry technician at a tanker base during the summer of 2004.[2]  Depo. Newman 81:4-83:2.  According to Newman, the 2004 fire season was a mild one and his last day on the job was September 4, 2004.  Depo. Newman 84:8-13.  The effective date of Newman's resignation from employment was

---

[2] While Newman characterized the job as that of a "tanker base assistant," agency records indicate that Newman resigned from the position of "forestry technician" at the end of the 2004 fire season. Depo. Newman 81:8; Exh. 10.

September 30, 2004.[3]  Depo. Newman Exh. 10.  Newman had advised

the Forest Service that he intended to return to school in

September 2004, and he indeed did so on August 30, 2004, leaving

him unable to work weekdays.  Depo. Newman 100:5-14; 101:13-

102:16; Exh. 10.  The record also indicates that the Forest

Service made on the job training operating a forklift available

to Newman that summer.  As Newman explained at his deposition, he

gained some experience operating a forklift at the tanker base,

but reported to the Forest Service that it aggravated his back

condition.  Depo. Newman 112:20-113:14.

By September 2004, Newman only needed between two and four

more hours of forklift training.  Depo. Newman, Exhs. 11, 13, 15.

The Forest Service made several attempts to schedule those final

hours of training in the weeks before Newman's employment

officially ended.  Depo. Newman, Exhs. 11, 13, 15.  Newman

rebuffed its efforts, however, writing just days before the

effective date of his resignation that the Forest Service

"need[ed] to stop" its "constant harassment regarding [f]orklift

training in [its] attempt to fulfill [its] obligation as written

in the settlement agreement."  Depo. Newman Exh. 12.

Despite Newman's apparent unwillingness to participate in

additional forklift training, the Forest Service indicated it was

---

[3] Newman claims his employment was "terminated" on September
4, 2004, and only asked the Forest Service to administratively
finalize its decision so that he could receive payment for accrued
vacation leave.  Pl.'s Br., 3.  Regardless, the record reflects
that Newman officially resigned from his position effective
September 30, 2004.  Depo. Newman, Exh. 10.

"still committed to compliance with [the] settlement agreement" even after he resigned, and continued its efforts to schedule the final few hours of forklift training.  Depo. Newman Exh. 13, 15, 16.  In February 2005, the Forest Service even offered to amend the settlement agreement to cover the cost of tuition, per diem, lodging, airfare, and salary for attending a four-day forklift training school in Seattle.  Depo. Newman, 105:25-106:12, 109:14-11-:6, Exhs. 13, 14, 17.  As he had before, Newman rejected the Forest Service's offer in favor of litigation.  The undisputed evidence of record thus establishes that the Forest Service had provided Newman with all but a few hours of forklift training by the time his employment ended in September 2004.  The record further reflects that the Forest Service attempted in good faith to schedule the few remaining hours of training, thereby satisfying its obligations under the terms of the settlement agreement.

As a final matter, it is worth noting that the settlement agreement set forth a specific procedure for Newman to follow in the event he felt that the Forest Service was in breach of the agreement.  If Newman believed the Forest Service was not in compliance and wanted to reinstate his EEO complaint, the settlement agreement required that he file a request for reinstatement "within 30 days of the alleged failure to implement" with the Department of Agriculture's Office of Civil Rights.  Depo. Newman, Exh. 9, p. 3.  Such a request was to "include a copy of [the settlement] agreement, an explanation of

which particular term(s) have not been implemented, and any
relevant documents." Dep. Newman, Exh. 9, p. 3. Instead of
complying with the aforementioned procedure, Newman advised the
EEOC by way of an October 16, 2004, letter that he was attempting
to appeal the decision it had mistakenly entered on June 9, 2004,
dismissing his EEO complaint for failure to state a claim and
timely exhaust his administrative remedies. Decl. Abbott, Exhs.
21, 22. The EEOC nevertheless construed Newman's untimely appeal
as a noncompliance claim, and remanded it to the agency for
decision. Decl. Abbott, Exh. 24.

      For all of the above reasons, this Court concludes that the
Forest Service complied with the terms and conditions of the
settlement agreement, which precludes Newman from pursuing his
claims in this litigation and the Forest Service is entitled to
summary judgment on that basis.

      **B.  Exhaustion of administrative remedies**

      Even assuming the settlement agreement did not bar Newman's
claims, the Forest Service argues in the alternative that it is
entitled to summary judgment based on Newman's failure to timely
exhaust his administrative remedies. This Court agrees.

      As a prerequisite to bringing a Title VII employment
discrimination action in federal court, an employee must first
exhaust his administrative remedies. *B.K.B. v. Maui Police
Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). Title VII's remedial
scheme, including its exhaustion requirements, applies equally to
claims under the Rehabilitation Act, such as those asserted by

Newman in this case.  *Boyd v. U.S. Postal Service*, 752 F.2d 410, 412 (9th Cir. 1985); *Leorna v. U.S. Department of State*, 105 F.3d 548, 550 (9th Cir. 1997).

This well-established exhaustion "requirement serves the purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B.*, 276 F.3d at 1099 (*quoting Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).  Courts require "strict adherence" to the procedural requirements because doing so "is the best guarantee of evenhanded administration of the law."  *National Railroad*, 536 U.S. at 108 (*quoting Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980).  An employee who fails to exhaust his administrative remedies by following the requisite procedures is precluded from pursuing an action in federal court.  *See Johnson v. United States Treasury Dept.*, 27 F.3d 415, 416 (9th Cir. 1994); *Boyd,* 752 F.2d at 414-15.

Here, the Forest Service moves to summarily dismiss Newman's claims on the basis that he failed to timely initiate contact with an EEO counselor, as required by 29 C.F.R. § 1614.105(a).  That regulation provides, in pertinent part, that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).

The record reflects that Newman initiated contact with an EEO counselor on December 31, 2003.  Decl. Abbott, Exh. 20.  He

described the basis of his disability discrimination claim as the fact that he "[w]as laid off on 9/24/03 and was not given re-hire rights, was told he would have to reapply for Federal Service." Decl. Abbott, Exh. 20.  According to Newman's deposition testimony, his primary claim in this litigation is that the Forest Service continued to employ him after his injury until September 24, 2003, for the sole purpose of establishing that he had "no loss of wage-earning capacity" for purposes of adversely affecting his federal workers' compensation claim.  Depo. Newman 71:18-74:10.

Under either characterization, it is clear from the record that the last date on which the Forest Service could have taken the adverse employment action Newman complains of was September 26, 2003, the date his employment was terminated.  Depo. Newman, Exh. 6.  Despite the fact that his employment was terminated on September 26, 2003, Newman did not initiate contact with an EEO officer until December 31, 2003, more than three months later.

Newman nevertheless argues he timely initiated contact because the "effects" of the Forest Service's actions were not clear to him until the Department of Labor's OWCP informally denied his claim on December 3, 2003, and the 45 day period began to run at that time.  Pl.'s Response, 5.  As the United States Supreme Court has explained, however, "[t]he EEOC charging period is triggered when a discrete unlawful practice takes place" and "a new charging period does not commence upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects

resulting from the past discrimination." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162, 2169 (2007).  Newman's argument that the 45 day period did not begin to run until he became aware of the adverse effects of the Forest Service's allegedly discriminatory action thus fails.  In addition, the action Newman apparently claims should have triggered the 45 day period was taken by the OWCP, not the Forest Service.  To the extent Newman takes issue with the OWCP's decision, his claim should have been addressed to that agency.  With regard to the Forest Service, the last date on which it could have taken any adverse employment action against Newman was September 26, 2003, and the period for initiating contact with the EEO counselor began to run at that time.[4]

Because Newman failed to initiate his informal complaint within the mandatory 45-day period, his Rehabilitation Act claims are barred based on his failure to timely exhaust his administrative remedies.

---

[4] This result also finds support among the many courts holding that the various statutory and regulatory time periods in employment discrimination cases, including the forty-five day period for initiating pre-complaint counseling, begin to run on the date the employee learns of the adverse employment decision, as opposed to the date the employee discovers the allegedly discriminatory motive underlying the action. *See e.g.*, *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558-59 (10th Cir. 1994); *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88-89 (4th Cir. 1990).

**C. FECA claim**

Finally, the Forest Service moves to summarily dismiss Newman's claim, clarified by him at his deposition, that it continued to employ him after his on-the-job injury for the sole purpose of establishing that he had "no loss of wage-earning capacity," thereby undermining his federal workers' compensation claim under the FECA.  Depo. Newman 71:18-74:10.  According to the Forest Service, this Court lacks jurisdiction to consider Newman's FECA claim.  The Forest Service is correct.

As the Ninth Circuit recently explained, "FECA establishes a comprehensive and exclusive workers' compensation scheme for federal employees" like Newman.  *Markham v. United States*, 434 F.3d 1185, 1187 (9th Cir. 2006).  That statutory scheme "explicitly provides that the courts do not have jurisdiction to review FECA claims challenging the merits of benefit determinations."  *Markham*, 434 F.3d at 1187.  The explicit statutory provision to that effect reads as follows:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is –
> (1) final and conclusive for al purposes and with respect to all questions of law and fact; and
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).

Only "two narrow exceptions to this absolute jurisdictional bar" exist.  *Markham*, 434 F.3d at 1187.  Pursuant to those exceptions, "[c]ourts retain jurisdiction to consider

constitutional challenges or claims for violation of a clear statutory mandate or prohibition." *Markham*, 434 F.3d at 1187.

Newman makes no such allegations in this case.  To the contrary, his sole claim is that the Forest Service continued to employ him after his injury for purposes of establishing that he had incurred no loss of wage-earning capacity, thereby undermining his federal workers' compensation claim.  Depo. Newman 71:18-74:10.  Newman is, in effect, attempting to challenge an apparent administrative assessment that he has no loss of earning capacity for purposes of his FECA claim.  This Court lacks jurisdiction to consider Newman's challenge, and his claim must be dismissed.

**IV. Conclusion**

For the reasons discussed above, the Forest Service is entitled to judgment as a matter of law on Newman's claims under the Rehabilitation Act on the basis that they are barred by the parties' settlement agreement.  Alternatively, the Forest Service is entitled to summary judgment because Newman failed to timely exhaust his administrative remedies.[5]  Finally, Newman's FECA claim should be summarily dismissed based on lack of jurisdiction.

---

[5] Having so concluded, this Court need not address the Forest Service's alternative argument that it is entitled to summary judgment as to Newman's Rehabilitation Act claims on the basis that he does not have a qualifying disability.